**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIANA RHEDRICK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 09-1729 |
| OPTION ONE MORTGAGE CORPORATION | : | |

**MEMORANDUM RE: OUTSTANDING MOTIONS**

**Baylson, J.** **September 16, 2009**

## I. Background and Procedural History

### A. Factual Background

The focus of these tangled proceedings is the property at 54 High Street, Sharon Hill, Delaware County, Pennsylvania ("the Property"). Most of the facts are undisputed. On or around June 17, 2005, Tiana Rhedrick ("Rhedrick") and Kevin Andrews ("Andrews") purchased the Property, subject to a mortgage with Option One Mortgage Corporation ("Option One").[1] According to Rhedrick, her mortgage provided that Option One had the responsibility to put a certain portion of her payments into escrow for the purpose of paying the taxes and insurance on the Property. Option One allegedly failed to do so, and on December 12, 2007, the Delaware County Tax Bureau auctioned off the Property to recover the unpaid taxes.

The successful bidder in that tax auction was Keith Bentrup ("Bentrup"),[2] and he therefore purchased the property. Records concerning this sale reveal that, in bidding at the

[1] The parties agree that Rhedrick and Andrews are Pennsylvania citizens and that Option One is a Massachusetts company with a principal place of business in California.

[2] The parties agree that Bentrup is a Pennsylvania citizen.

auction, Bentrup was actually bidding on behalf of Icarus Enterprises, LLC ("Icarus").[3] (Oral Arg. Option One's Ex. 1). Documents produced by Option One during the current litigation indicate that Raul Jauregui, Esq. ("Mr. Jauregui") is presently the president of Icarus. (Oral Arg. Option One's Ex. 4).[4]

**B. Procedural History**

Bentrup filed suit against Rhedrick and Andrews in the Court of Common Pleas of Delaware County, Pennsylvania on April 18, 2008. In the litigation, Bentrup was represented by Mr. Jauregui.[5] Bentrup's first claim against Rhedrick and Andrews was for ejectment. In that claim, Bentrup alleged that he was the owner of the Property,[6] and he sought "judgment against defendant [sic] restoring plaintiff to the possession of the above described real property, for costs and such relief as the Court may deem just." Bentrup's second claim, for mesne profits, alleges that Bentrup was deprived of rents and profits due to Rhedrick and Andrew's unlawful

---

[3] The parties agree that Icarus is a Pennsylvania company.

[4] Mr. Jauregui stipulated to the admissibility and authenticity of all of the documents provided by Option One in oral argument held before this Court on August 12, 2009. (Oral Arg. 44:2-21).

Bentrup and Icarus later filed a Realty Transfer Tax Statement of Value on September 19, 2008, in which Bentrup indicated that he sold the Property to Icarus for $1.00. (Id.). According to the tax document, Icarus's "Correspondent" is Mr. Jauregui, counsel for Rhedrick in this case, whose appearance indicates that he is with the firm Parish McCabe, P.C.

[5] Mr. Jauregui has not contended that his position with Icarus was anything other than president or secretary during the relevant time period.

[6] This allegation was made despite Bentrup's later admission in the tax filing that he did not personally own the Property and only purchased the Property as an agent of Icarus, and despite Mr. Jauregui's admission of Bentrup's agency in oral argument. (Oral Arg. 40:20-23). Mr. Jauregui qualified this earlier in oral argument by stating that Bentrup agreed to defend any cloud on the title to the Property to the benefit of Icarus, (Oral Arg. 5:21-6:4).

possession of the Property, and he sought damages in the sum of $4,000.

After serving the complaint on both Rhedrick and Andrews and no answer being filed by the defendants, Bentrup filed a motion for default judgment on July 1, 2008. Bentrup's memo and proposed order specifically requested default judgment on both the ejectment claim and the mesne profits claim. In the motion, Bentrup, represented by Mr. Jauregui, again stated that he was the genuine owner of the property. Because Rhedrick and Andrews had failed to answer the complaint, default was entered on August 11, 2008 as to the ejectment claim. The judge entering the order directed that "said Motion is GRANTED to the extent that a default judgment is entered in favor of Plaintiff and against Defendants for possession of the premises known as 54 High Street, Sharon Hill, Pennsylvania." There is no judgment in the state court docket as to the mesne profits claim. After default judgment was entered as to ejectment, the only action taken by Bentrup was a praecipe for possession filed on August 13, 2008. Rhedrick never filed anything in state court in defense of the two claims brought by Bentrup, and Rhedrick voluntarily left the Property on September 18, 2008.

**C. <u>Third Party Complaint by Rhedrick Against Option One</u>**

Seven months after default was entered and without moving to open the default as provided by the Pennsylvania Rules of Civil Procedure, Rhedrick (only) filed a "third party complaint and new matter" against Option One on March 17, 2009. Mr. Jauregui also represented Ms. Rhedrick in her third party complaint against Option One.[7]

---

[7] Mr. Jauregui assumed representation of Rhedrick even though he later stated at oral argument that he believed the mesne profits claim of his first client, Bentrup, against Rhedrick, was still outstanding in state court. (Oral Arg. 9:4-6). As noted above, Mr. Jauregui took no act on behalf of Rhedrick in defense of the claims made by Bentrup against Rhedrick and did not seek to open the default judgment. At several points in the third party complaint filed by Mr.

Rhedrick's third party complaint alleges that she entered into her mortgage under duress and undue influence, and that Option One breached the mortgage agreement by not putting a portion of Rhedrick's payments into escrow to pay off her taxes. Rhedrick sought redress for the harms she allegedly suffered in having her home auctioned off, for the emotional and reputational harms arising from the auction, any resulting financial harm, and sought to "quiet title" on both the property and Rhedrick's liability on the mortgage. On the basis of these allegations, Rhedrick brought claims for breach of contract, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), common law fraud, duress and undue influence, improper execution, and for punitive damages (the last of which was later withdrawn). The third party complaint did not contain an independent quiet title claim.

There is some dispute between the parties as to when Rhedrick's third party complaint was served on Option One. The state court docket discloses that Rhedrick's third party complaint was filed on March 17, 2009, with "proof of service by U.S. mail" entered on the same date. In support of Rhedrick's Motion to Remand filed with this Court, Mr. Jauregui attaches a receipt from the U.S. Postal Service indicating that the third party complaint was mailed on March 17, and he includes a printout from the U.S. Postal Service's website indicating that the third party complaint arrived at Option One's address on March 19, 2009 at 10:09am. (Doc. 30 Ex. A).[8]

---

Jauregui, Rhedrick actually appears to request relief in favor of Bentrup by seeking to quiet title "to said property in plaintiff and against defendant and third party defendant."

[8] However, the statements in the affidavit conflict with the Proof of Service for the third party complaint in the state court file, which is dated March 13, 2009; the Proof of Service states that Tannia Jauregui, Esq. (who presents that she is part of Mr. Jauregui's law firm, Parish McCabe, PC, and who is later identified as Mr. Jauregui's sister) "served on behalf of the

Option One, on the other hand, contends in its Response to the Motion to Remand that it did not receive the third party complaint on March 19, 2009, but instead received it on April 9, 2009. Option One relies in particular on the state court docket, which records the filing of an "Affidavit of Defendants Return of Service" on April 21, 2009, and also relies on the date stamp on its copy of the third party complaint, received by its legal department, which states that the third party complaint was received on April 9. (Doc. 32 Ex. A). Option One also challenges Rhedrick's method of service, which will be discussed below.

Option One filed a Notice of Removal on April 23, 2009 with this Court and with the state court, asserting that subject matter jurisdiction is proper due to diversity and that the amount in controversy for Rhedrick's mortgage is over $75,000.

**C. <u>Motions Currently Pending and Oral Argument</u>**

Once Option One removed the case to federal court, the parties filed several motions, which are currently before the Court. After filing a partial answer to the third party complaint on May 7, 2009, (Doc. 5), Option One filed a Motion to Dismiss on the same day, addressing the merits of each of Rhedrick's claims, (Doc. 6). On May 15, 2009, Bentrup (represented by Mr. Jauregui) filed a Motion to Remand Action to State Court. (Doc. 7). Also, on May 15, 2009, Rhedrick (also represented by Mr. Jauregui) filed a Motion to Amend, seeking to replace the current third party complaint with an amended third party complaint that did not contain the punitive damages claim. (Doc. 9). On the same day, Bentrup filed a Motion to Amend, (Doc. 8), seeking to add two quiet title claims against Option One to nullify the mortgage and obtain

plaintiff via first class US MAIL . . . to the business address of third party defendant." Not only does this present a conflict with what Mr. Jauregui has stated to this Court, but it also presents an issue due to Tannia Jauregui's later representation of Keith Bentrup, as will be seen below.

ownership of the property not subject to the mortgage.[9] Option One subsequently filed a response to each of Bentrup and Rhedrick's motions, (Doc. 11, 12, 13, 17), and filed a supplemental brief in support of its Motion to Dismiss, (Doc. 14).

On July 2, 2009, Option One filed a Motion for Sanctions, seeking to strike all motions filed by Bentrup and Rhedrick and seeking reasonable attorneys' fees and costs, on the basis of both Bentrup's representations concerning his current ownership of the property and Mr. Jauregui's knowledge that Bentrup only acted as an agent of Icarus. (Doc. 18). Option One also filed a Motion to Disqualify Mr. Jauregui from his representation of Bentrup and Rhedrick, (Doc. 22), on July 28, 2009, arguing that Mr. Jauregui has several conflicts of interest, had acquired a proprietary interest in the litigation due to his association with the company which owns the property, engaged in a business transaction with a client (Mr. Bentrup), will likely be a witness in the proceedings, and made false statements to the Court. Even though he did not respond on behalf of his clients to any of the other motions filed by Option One, Mr. Jauregui filed a response to the Motion for Sanctions on behalf of Rhedrick. (Doc. 19).

The Court held a hearing on August 12, 2009. (Doc. 26).

### D. Subsequent Filings

As requested, Mr. Jauregui sent a letter on August 24, 2009 notifying the Court that he will be withdrawing as attorney for Bentrup and continuing to represent Rhedrick.[10] In addition,

---

[9] In the proposed complaint, Bentrup represents that he still owns the Property, despite having sold it to Icarus on September 19, 2008, and despite the fact that Raul Jauregui knew that the property had been sold to Icarus.

[10] However, continuing representation of both Bentrup and Rhedrick will result in Mr. Jauregui representing a client defending claims made on behalf of the company for which he is president.

Mr. Jauregui notified the Court that his sister, Tannia Jauregui, Esq. ("Ms. Jauregui"), who presently identifies herself as a member of the Aurora Law LLC firm, will assume representation of Bentrup and has assured the Court that Ms. Jauregui "is in no way associated with my practice."[11]

Mr. Jauregui subsequently filed a supplemental brief in support of his Motion to Remand, (Doc. 30), and Option One filed its supplemental brief on August 26, 2009, (Doc. 29). Ms. Jauregui has not filed a brief indicating whether Mr. Bentrup's position had changed or remained the same on any of the outstanding motions.

Finally, on September 1, 2009, Option One filed a supplemental brief that attached an exhibit that had been mistakenly omitted from the original filings due to a clerical error, (Doc. 32), and filed a response to Mr. Jauregui's supplemental brief, (Doc. 31).

## II. Bentrup's Motion to Remand

### A. Parties' Contentions

Though the parties have filed several motions and raise many issues that exist in this case, particularly ethical issues concerning Raul Jauregui's representation of his clients and the past representations he has made to both this Court and the state court,[12] Bentrup's Motion to Remand

---

[11] Ms. Jauregui assumes this representation of Bentrup despite the fact that service of the third party complaint was executed by Ms. Jauregui on behalf of Mr. Jauregui and his firm, representing Rhedrick. See footnote 8. Ms. Jauregui also indicated that she was part of Mr. Jauregui's law firm when she attested to serving each of the documents in the state court proceedings. In addition, Ms. Jauregui's firm is documented as residing at the same address as Mr. Jauregui, his law firms, and Icarus, according to public documents provided by the Pennsylvania Department of State, the Disciplinary Board of the Pennsylvania Supreme Court, and many of the state court filings.

[12] While the Court does not make any specific findings or holdings on the topic, the ethical issues that Option One has raised throughout the proceedings in this Court, and several

will be addressed first.[13] Bentrup argues that the diversity of citizenship requirement is not

---

others that Option One did not raise, are troubling. There are two categories of ethical issues involved in this case: issues concerning current conflicts of representation, and those concerning statements that have been made throughout the proceedings in state court and this Court.

As to the first category, concerning conflicts of interest, facts brought to the Court's attention by Option One indicate that Raul Jauregui's decision to represent Tiana Rhedrick may violate the Rules of Professional Conduct for several reasons: (i) Rhedrick is defending a claim made on behalf of the company for whom Mr. Jauregui is the president; (ii) at several points in the third party complaint, Rhedrick appears to request relief that would benefit Bentrup, Mr. Jauregui's initial client who was acting on behalf of Icarus, more than Rhedrick herself, e.g., quiet title; (iii) Mr. Jauregui may have a pecuniary interest in the litigation, since the company he works for benefits from the claims in the complaints filed by both Bentrup and Rhedrick; (iv) Mr. Jauregui signed the papers transferring ownership of the property to Icarus, and it is possible that he may be a fact witness for the claims of Bentrup and Rhedrick.

Tianna Jauregui's representation of Keith Bentrup also raises issues under the Rules of Professional Conduct for several reasons: (i) Ms. Jauregui worked on this case at Mr. Jauregui's law firm in helping Mr. Jauregui represent Rhedrick; (ii) Ms. Jauregui may be a fact witness on the issue of service of the third party complaint since she signed the Proof of Service and attested that she was the one that served Option One by mail; (iii) Ms. Jauregui and her law firm, Aurora Law LLC, are based out of the same address as Mr. Jauregui, his firm and Icarus; (iv) Ms. Jauregui and Mr. Jauregui are siblings.

As to the second category, concerning statements that were made by Mr. Jauregui's clients in the state court and federal court proceedings, several issues give this Court pause: (i) Mr. Jauregui has been inconsistent in his filings as to what firm he is a member of; (ii) Mr. Jauregui's recent letter to the Court states that Ms. Jauregui "is in no way associated with my practice," but Ms. Jauregui attested to Proof of Service for every filing that was made in the state court proceedings by indicating that she worked for Mr. Jauregui's firm; (iii) Mr. Jauregui never noted the fact that Bentrup was not the true owner of the property in any of the state court filings, but instead consistently represented that he was; (iv) at oral argument, Mr. Jauregui stated that Bentrup was the appropriate plaintiff since he agreed to defend any cloud on the title of the Property, but it is not clear why Bentrup would agree to do that if he never owned the property to begin with; (v) Mr. Jauregui's recent letter to the Court has an attached affidavit from Mr. Jauregui where he states that he served the third party complaint on Option One, but the Proof of Service for the third party complaint is signed by Ms. Jauregui; (vi) Mr. Jauregui represented Bentrup at the same time that Mr. Jauregui handled the transfer of title for the property from Bentrup to Icarus, and there is no evidence on the record that Bentrup was represented by another attorney or advised to seek the advice of another attorney. Under all the circumstances, the Court has decided to send a copy of this Memorandum and Order to the Disciplinary Board of the Supreme Court of Pennsylvania. Although Option One has moved for sanctions for some of these issues, this Court believes that the Disciplinary Board should be able to conduct a more appropriate investigation.

satisfied in this case since Bentrup, the original plaintiff, is a Pennsylvania citizen and Rhedrick, one of the original defendants, is also a Pennsylvania citizen. Bentrup claims that Option One was well aware of the lack of diversity and improperly changed the caption of the lawsuit to "Rhedrick v. Option One" in order to fabricate federal jurisdiction. Bentrup also contends that Option One did not file the notice of removal within thirty days after service. Bentrup requests that the Court remand the case and award him attorneys' fees for the Motion.

In response to Bentrup's Motion to Remand, Option One claims that Rhedrick's action should be treated not as a third-party suit for purposes of exercising subject matter jurisdiction, but as an entirely new action due to the entry of default against Rhedrick and because of Rhedrick's delay in filing the third party complaint. Considering the claims remaining in the case, Option One contends that the diversity requirement is satisfied since Rhedrick is the only plaintiff on the third party complaint, and is a Pennsylvania citizen. Option One, the defendant, is incorporated in Massachusetts with a principal place of business in California. In the alternative, Option One argues that this Court can realign the parties in interest in considering whether diversity is satisfied, pursuant to City of Indianapolis v. Chase Nat'l Bank of City of New York, 314 U.S. 63, 69 (1941).

In its supplemental brief, Option One provides several cases in support of its opposition to remand, asserting that they stand for the proposition that third-party complaints, when they are separate and independent from the original claim, are independently removable by third-party

---

[13] While the Court notes that it is unclear whether Bentrup has the right to file a motion to remand, such a concern does not preclude the Court from considering whether it has subject matter jurisdiction. "Lack of subject matter jurisdiction is a ground for dismissal and may be raised at any time by the parties or by the court sua sponte." Vanderwiele v. Murphy, 2005 WL 2396973, at *1 (E.D. Pa. Sept. 27, 2005) (Kelly, J.).

defendants under 28 U.S.C. § 1441(c). It also contends that removal should not depend on the state law variance in the procedures for third-party practice and should instead focus on elements other than the satisfaction of state procedural requirements.

**B. Legal Standard for Motions to Remand**

Federal district courts have jurisdiction over cases where the matter in controversy exceeds the sum or value of $75,000, and there exists complete diversity between citizens of different states. 28 U.S.C. § 1332(a). "Lack of subject matter jurisdiction voids any decree entered in a federal court and the continuation of litigation in a federal court without jurisdiction would be futile." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987); Dunson v. McNeil-PPC, Inc., 346 F. Supp. 2d 735, 737 (E.D. Pa. 2004). Thus "[i]f the court determines that it lacks federal subject matter jurisdiction, then remand is mandatory." Apoian v. Am. Home Prods., Corp., 108 F. Supp. 2d 454, 455 (E.D. Pa. 2000).

Federal "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." Steel Valley Auth., 809 F.2d at 1010. In Brown v. Francis, 75 F.3d 860 (3d Cir. 1996), the Third Circuit interpreted "all doubts" to mean that if "there is any doubt as to the propriety of removal, [the] case should not be removed to federal court." Id. at 865. The "removing party bears the burden of proving the existence of federal subject matter jurisdiction." Apoian, 108 F. Supp. 2d at 455.

28 U.S.C. § 1447(c) states:

> A motion to remand the case on the basis of any defect in the removal procedure must be within 30 days after filing of the notice of removal under section 1146(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Remand to the state court is appropriate either for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." PAS v. Travelers Ins. Co., 7 F.3d 329, 352 (3d Cir. 1993).

### C. Whether Diversity Jurisdiction Exists Here

First, it is undisputed between the parties that the amount in controversy requirement is satisfied in this case. Option One points out that the subject of the dispute, the mortgage on the Property, is valued at $85,000, and the amount in controversy requirement is therefore satisfied.

In asserting that the diversity of citizenship requirement is satisfied in this case, Option One primarily relies on its argument that the parties should be realigned in accordance with the Supreme Court's decision in City of Indianapolis v. Chase Nat'l Bank of City of New York, 314 U.S. 63, 69 (1941).[14]

This Court will follow the decision by Judge Rosenthal considering a similar issue in the context of § 1441(a) in Huntsman Corp. v. Int'l Risk Ins. Co., 2008 WL 4453170 (S.D. Tex. Sept. 26, 2008). In that case, a defendant filed a third-party complaint against several third-party defendants, and a number of the third-party defendants sought to remove the case to federal court. Judge Rosenthal, although allowing remand on federal question grounds, denied removal on diversity grounds.

---

[14] Option One's reliance on cases for its argument that 28 U.S.C. § 1441(c) provides an avenue for removal in this case were all decided under a prior version of § 1441(c). Section 1441(c), as amended in 1991, provides that: "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." The third party action against Option One does not implicate a federal question for purposes of 28 U.S.C. § 1331, as required by the current version of § 1441(c). See BJB Co. v. Comp Air Leroi, 148 F. Supp. 2d 751, 754 (N.D. Tex. 2001).

After recognizing that § 1441(c) did not provide a mechanism for removal in diversity cases, id. at *3 n.4, she next considered the argument that third-party defendants have the right to remove cases under 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." § 1441(a) (emphasis added). Judge Rosenthal recognized that most courts have rejected such an argument and stated that "in general, [a] third party defendant cannot remove a case to federal court on the basis of diversity jurisdiction." Id. at *3 (internal citations and quotations omitted) (citing, inter alia, Avis Rent a Car Sys., Inc. v. Zea, 2005 WL 2850248, at *2 (S.D. Tex. Oct. 31, 2005) ("[T]he overwhelming majority view is that third-party defendants are not 'defendants' with[in] the meaning of that term as it is used in § 1441(a), and may not remove an action from state court.")); see also Abington Memorial Hosp. v. Diviney, 2008 WL 2446813, at *2 (E.D. Pa. June 16, 2008) (Joyner, J.) (noting that, in the context of an attempted removal on the basis of federal question, "the ability of a third-party defendant to remove a case from state to federal court remains in doubt").

Judge Rosenthal next considered the other argument advanced by Option One: that third-party defendants can be realigned as defendants, pursuant to the Supreme Court's decision in City of Indianapolis, which would provide third-party defendants with the opportunity to remove the case. In conducting an extensive review of the relevant precedent, Judge Rosenthal stated that "[t]he recent case law disapproving of realigning parties to supply removal jurisdiction and to enable third-party defendants to remove is persuasive and weighs against extending such uses of realignment to this case, in which third-party defendants seek realignment to bring themselves within the scope of section 1441(a) and to create diversity jurisdiction." Id. at *6. Nevertheless,

Judge Rosenthal determined that even if realignment could occur, the third-party defendants could not show that the diversity requirement would be satisfied. Id. at *7-11.

The same is true in this case. Bentrup and Rhedrick cannot be realigned together because Bentrup still has his claim for mesne profits pending against Rhedrick. The order entered by the state court judge only entered default on the ejectment claim, not the mesne profits claim, which was confirmed by Mr. Jauregui at oral argument. If only for this fact, they are still adverse parties in this case, as it was pending in state court. The presence of a third party action does not allow the Court to set aside the fact that there is an active claim between Bentrup and Rhedrick and that both are citizens of Pennsylvania, which precludes the exercise of diversity jurisdiction. Allowing removal of this case would expand federal jurisdiction beyond any precedent, and would be contrary to established Supreme Court precedent on standards for removal.

**D. Whether Removal Was Timely**

Although the Court has determined that removal is not proper because of the lack of diversity, it will consider, because it was briefed by the parties and may become relevant if there is any appeal, Bentrup's argument that Option One's removal was not timely. "The notice of removal of a civil action or proceeding [must] be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b).

Though Mr. Jauregui relies on his service of the third party complaint in support of his argument, a review of the papers reveals that Mr. Jauregui's service was improper under the Pennsylvania Rules of Civil Procedure. Rule 425 of the Pennsylvania Rules of Civil Procedure provides the form of service on "additional defendants": "Original process shall be served upon

an additional defendant who is not already a party to the action in the same manner as if he or she were an original defendant." Pa. R. Civ. P. 425(a). Rule 424 governs service for corporations, and it provides that "[s]ervice of original process upon a corporation or similar entity shall be made by handing a copy to [an executive, partner, trustee, manager, clerk, someone in charge of any regular place of business, or an agent authorized to receive service of process] provided the person served is not a plaintiff in the action." Pa. R. Civ. P. 424. Even though Option One relies on the Pennsylvania Rule for service by mail in its supplemental brief challenging Rhedrick's service, proper service on a corporation "cannot be effected through the postal system, including certified mail." Sampath v. Concurrent Technologies Corp., 227 F.R.D. 399, 402 (W.D. Pa. 2005) (citing Staudte v. Abrahams, 172 F.R.D. 155 (E.D. Pa. 1997); Cahill v. Schults, 643 A.2d 121, 125 (Pa. Super. 1994)).[15]

While Bentrup insists that Option One did not file its notice of removal "within thirty days after the receipt by the defendant, through service or otherwise," § 1446(b), the evidence offered by Bentrup to establish Option One's receipt of the third party complaint—a receipt for certified mail and a tracking receipt from the Postal Service's website—does not satisfy the Pennsylvania rules for service, and Bentrup's reliance on improper service to "start the clock" for the thirty-day removal deadline is misplaced. As the Supreme Court held in Murphy Bros., Inc.

---

[15] Even assuming that Rhedrick could serve Option One by way of mail under Rule 403, service still would have been improper. Rule 403 provides that "[i]f a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent." Mr. Jauregui filed a copy of the receipt that he received from the U.S. Postal Service upon mailing the third party complaint. (Doc. 30 Ex. A). The receipt reveals that Mr. Jauregui mailed the third party complaint through certified mail, but did not pay for a signed receipt from the recipient. Therefore, even if Option One could have been served through the mail, the service was still improper.

v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999), "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." Id. at 347-48. Bentrup can not rely on Rhedrick's informal service in order to establish that Option One filed a late notice of removal. Bentrup's evidence only shows that the complaint arrived at Option One's address and does not show that anyone at Option One was made aware of the lawsuit. As the Supreme Court recognized in the context of foreign individuals and entities, "the so-called 'receipt rule'—starting the time to remove on receipt of a copy of the complaint, however informally, despite the absence of any formal service—could . . . operate with notable unfairness." Id. at 356. Rather than supporting Bentrup's position, this improper service is one of several arguments supportive of Option One's Motion to Dismiss Rhedrick's claims. If jurisdiction existed, Option One would be entitled to raise the issue of improper service in federal court.

## III. Option One's Motion to Dismiss Rhedrick's Third-Party Complaint

Although the Court will not decide them, Option One's grounds for its Motion to Dismiss have been reviewed and will be summarized for the benefit of the state court in the event this issue is presented in state court. Option One has raised three grounds in support of its Motion to Dismiss.

First, as discussed above, Option One argues that Rhedrick did not properly serve the third party complaint on Option One pursuant to the Pennsylvania Rules of Civil Procedure. Second, Option One argues that Rhedrick's third party complaint was not filed within the time imposed by the Pennsylvania Rules. Finally, though not raised in its briefs, Option One asserted

at oral argument that Rhedrick could not file a third party complaint after defaulting without moving to open the default.

Option One's first argument concerning method of service has already been discussed.

As to Option One's second argument, that the third party complaint was not timely, Rule 2253 of the Pennsylvania Rules of Civil Procedure provides a deadline of "sixty days after the service upon the original defendant of the initial pleading of the plaintiff or any amendment thereof" for joinder of defendants by way of third party complaint. Pa. R. Civ. P. 2253(a)(1). According to the state court docket, the third party complaint was filed on March 17, 2009—272 days after service of the initial complaint on June 18, 2008.

The final challenge made to Rhedrick's third party complaint is that Rhedrick did not file the third party complaint until after default had already been entered against her. However, the order entering default only did so as to the ejectment claim. The mesne profits claim is still outstanding.

Rhedrick has failed to address the merits of any of these arguments.

An appropriate Order follows.

O:\CIVIL 09-10\09-1729 Rhedrick v. Option One\09-1729 Rhedrick v. Option One - Memo Re Outstanding Motions.wpd