IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TIANA RHEDRICK,<br>    Plaintiff,<br><br>v.<br><br>OPTION ONE MORTGAGE<br>CORPORATION,<br>    Defendant. | CIVIL ACTION<br><br>NO. 09-1729 |
|---|---|

**MEMORANDUM**

**Baylson, J.**                                                                                                           **June 22, 2015**

## I.     Introduction

Five years after the underlying litigation in this matter was remanded to state court, Raul Jauregui, Esq., counsel for Plaintiff Tiana Rhedrick, has moved to seal the Court's September 17, 2009 Memorandum and Order in this case. Mr. Jauregui, joined by his sister Tannia Jauregui, Esq., (collectively "the Jaureguis"), argues that the Court's September 17, 2009 Memorandum and Order function as a de facto sanction of both Mr. and Ms. Jauregui that should be removed from the public record. Because the Court concludes that neither Mr. nor Ms. Jauregui were sanctioned in this case and that the Jaureguis have not shown good cause for sealing these dispositive documents from the public record, their motion will be denied.

## II.    Factual and Procedural History

The underlying dispute that gave rise to this case was remanded to state court on September 17, 2009 because of a lack of complete diversity (ECF 33, 34).[1] At the same time, the Court addressed Defendant Option One Mortgage Corporation's motion for sanctions (ECF 18)

---
[1] The full factual and procedural history for the underlying dispute is set forth in the Court's September 17, 2009 Memorandum (ECF 33).

1

and motion to disqualify Mr. Jauregui as counsel (ECF 22). After discussing briefly the issues raised in those motions, the Court "decided to send a copy of [its] Memorandum and Order to the Disciplinary Board of the Supreme Court of Pennsylvania" on the belief "that the Disciplinary Board should be able to conduct a more appropriate investigation." Memo. at 7-8 n.12 (ECF 33). The Court explicitly "d[id] not make any specific findings or holdings on the topic" of these ethical issues. Memo. at 7-8 n.12 (ECF 33). The Court's Memorandum and Order have been republished on Westlaw and LexisNexis. Rhedrick v. Option One Mortgage Corp., No. 09-cv-1729, 2009 WL 2996475, 2009 U.S. Dist. LEXIS 84970 (E.D. Pa. Sept. 16, 2009).

On October 3, 2014, more than five years after the case was remanded to state court, the Jaureguis submitted to chambers a Motion to File Under Seal (ECF 42) and a Motion for Sealing the Record (ECF 43), which sought to seal the Court's September 17, 2009 Memorandum and Order (ECF 33 and 34). On October 9, 2014, the Court ordered the Jaureguis to file a supplemental memorandum of law demonstrating that the Court has jurisdiction to consider the motions (ECF 36). On October 28, 2014, the Jaureguis filed a supplemental memorandum of law on the jurisdictional issue (ECF 37) and on October 30, 2014 the Court entered an order sealing the supplemental memorandum of law (ECF 38). On March 4, 2015, the Court ordered the Jaureguis to submit additional documentation to chambers (ECF 39), and on June 15, 2015, the Court entered an order to file on the docket the Motion to File Under Seal and the Motion for Sealing the Record (ECF 41).

### III. The Jaureguis' Contentions

The Jaureguis argue that the Court's public referral to the Disciplinary Board serves as a de facto sanction that harms their professional reputations, despite the lack of any public sanction from the Disciplinary Board. In their memorandum of law and in accompanying affidavits, they

2

contend that the referral has hindered their ability to obtain clients and employment. Mr. Jauregui also contends that opposing counsel in other matters have cited the language from the Court's Memorandum in support of unrelated motions for sanctions. Procedurally, the Jaureguis protest that they did not receive an adequate opportunity to respond or object to the referral. Factually, they argue that the issues identified in Option One's briefing and the Court's Memorandum were illusory, and that Ms. Jauregui is an innocent third-party who never entered an appearance in this case. The Jaureguis' motion requests that the Court seal its September 2009 Memorandum and Order (ECF 33 and 34), take down the PDF version of the Memorandum and Order published on the Court's public website, and seal all documents related to the present motions.

**IV.    Jurisdiction**

The Court first considers whether it has jurisdiction to grant the Jaureguis the relief they seek. The Jaureguis have not cited, and the Court has not located, any case directly addressing a district court's jurisdiction to seal public court records long after the underlying suit was dismissed for lack of subject matter jurisdiction. Instead, the Jaureguis argue that the Court has jurisdiction based on its inherent authority, its jurisdiction to consider collateral issues, and as a logical corollary to its jurisdiction to impose sanctions after remand to state court.

In Willy v. Coastal Corp., the Supreme Court held that a district court may impose Rule 11 sanctions after remanding a case to state court. 503 U.S. 131, 132 (1992). The Supreme Court noted that "it is well established that a federal court may consider collateral issues after an action is no longer pending. An imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." Id. at 138 (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)) (internal quotation marks and

3

alterations omitted). Imposing sanctions after remanding a case to state court "does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction" because the sanctions order "'does not signify a district court's assessment of the legal merits of the complaint.'" Id. (quoting Cooter & Gell, 496 U.S. at 396). Accordingly, "there is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedural rules" during the period that a federal court is mistakenly believed to have subject matter jurisdiction, and there is no constitutional problem with "allow[ing] the courts to impose Rule 11 sanctions in the event of [litigants'] failure to do so." Id. at 139.

The Third Circuit has similarly recognized that "a court does have inherent authority both over its docket and over the persons appearing before it" and "there is abundant authority permitting the imposition of sanctions in the absence of jurisdiction over a case." In re Orthopedic "Bone Screw" Products Liability Litigation, 132 F.3d 152, 156 (3d Cir. 1997).[2] The Third Circuit concluded that even when a court lacks subject matter jurisdiction, it may still "exercise its authority over the person before the court in the interest of enforcing compliance with the court's procedures." Id. at 156-57.

The Court may have jurisdiction to seal portions of the record to the extent that action addresses a collateral issue related to the Court's inherent power to manage its docket and the persons appearing before it. In addition, construing the Jaureguis' motion as a motion to modify a sanction, the Court may have jurisdiction to grant relief in the form of a modified sanction. However, if the Court's jurisdiction hinges on the imposition or modification of a sanction, the

---

[2] The Supreme Court has also recognized that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it" and "[w]hile this power 'ought to be exercised with great caution,' it is nevertheless 'incidental to all Courts.'" Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

Court's conclusion, discussed below, that the Jaureguis were not sanctioned in this case negates this possible jurisdictional basis.

As discussed below, the Jaureguis have not shown a right to the relief they seek. Accordingly, the question of whether the Court has jurisdiction to grant relief is moot and need not be resolved at this time.

**V.      Discussion**

     1.    <u>Tannia Jauregui Was Not Sanctioned or Referred for a Disciplinary Investigation</u>

Ms. Jauregui did not enter an appearance in this case and did not herself engage in any of the conduct discussed in the Court's September 17, 2009 Memorandum (ECF 33). Although Mr. Jauregui informed the Court by letter that Ms. Jauregui would be undertaking representation of Keith Bentrup, and the Court's Memorandum discussed potential concerns about that proposal, the discussion was ultimately hypothetical because Ms. Jauregui did not enter an appearance on behalf of Bentrup. Ms. Jauregui did not participate in this case as counsel and the Court's Order referring this matter to the Disciplinary Board was not intended to (and did not) include a referral of Ms. Jauregui.

Because the September 17, 2009 Memorandum and Order did not address any conduct by Ms. Jauregui, there is no good cause to seal them for her sake. To the extent there is any lingering confusion on this point, the Court hereby emphasizes that it did not sanction Tannia Jauregui and did not refer her for a disciplinary investigation. The Court's September 17, 2009 Memorandum and Order (ECF 33 and 34) should not be construed as making any comment on Tannia Jauregui's professional record nor used to disparage her professional reputation in any way.

2. Raul Jauregui Was Not Sanctioned and Has Not Shown Good Cause to Have His Disciplinary Referral Sealed From the Public Record

For different reasons, the Court also concludes that it did not sanction Raul Jauregui and that he has not shown good cause to seal the record.

The Third Circuit has not addressed facts that are precisely analogous to Mr. Jauregui's situation but the Tenth and Eleventh Circuits have persuasively concluded that a disciplinary referral without any factual finding of misconduct does not constitute a sanction. In Adams v. Ford Motor Co., 653 F.3d 299 (3d Cir. 2011), the Third Circuit considered whether an attorney had suffered harm, in the form of a sanction, sufficient to give the attorney standing to challenge the sanction. The Third Circuit noted that "[m]ost courts agree that mere judicial criticism of an attorney's conduct is insufficient to constitute a sanction which would support standing" but, "[o]n the other hand, courts nearly uniformly have held that an order rising to the level of a public reprimand qualifies as a sufficient sanction." Id. at 304. The Adams court further noted that the order at issue was "more than mere judicial criticism because the judge made a factual finding that [the attorney] had violated ABA Model Rule 3.5(c) and the judge then referred the matter to the Virgin Islands Bar Association for a formal investigation and disciplinary proceedings." Id. at 305. Nevertheless, "the order d[id] not constitute a formal reprimand, because the judge explicitly stated that he did not seek to 'disbar, suspend, or reprimand counsel.'" Id. at 305.

As a matter of first impression, the Third Circuit held that "a finding of attorney misconduct in an order that is unaccompanied by a formal reprimand or the imposition of monetary penalties constitutes a 'sanction.'" Id. Having concluded that the order was a sanction and that the attorney had standing to challenge it, the Adams court went on to vacate the order because the magistrate judge had erred in various ways in imposing the sanction. Id. at 306-09.

Likewise, in In re Goldstein, the Second Circuit concluded that a disciplinary referral coupled with explicit conclusions that an attorney "was in violation of various disciplinary rules" was "in the nature of a sanction." 430 F.3d 106, 111-12 (2d Cir. 2005) (holding that court had jurisdiction of appeal of the disciplinary referral).

The facts of Adams and In re Goldstein are distinguishable from the facts here. Most importantly, the order in Adams and the referral in In re Goldstein both contained a factual finding that the attorney had violated a rule of professional conduct. Id. at 305. By contrast, this Court's Memorandum explicitly did "not make any specific findings or holdings" regarding Mr. Jauregui's conduct. Memo. at 7 n.12 (ECF 33).

Instead, the facts here are analogous to Teaford v. Ford Motor Co., a Tenth Circuit decision in which a court referred an attorney's conduct to a bar disciplinary committee but made "no specific findings of misconduct, nor [did] it express any opinion of [the attorney's] actions." 338 F.3d 1179, 1181 (10th Cir. 2003). The Tenth Circuit concluded that such a referral "was not tantamount to a finding of misconduct, let alone imposition of a sanction." Id. at 1181. It was "analogous not to a censure or reprimand but to an order to show cause why sanctions should not be imposed." Id. Although a show cause order "may harm the attorney's reputation, no actual sanction has been imposed." Id. The Eleventh Circuit reached a similar conclusion in a non-precedential opinion. Adkins v. Christie, 227 F. App'x 804, 806 (11th Cir. 2007) (concluding that a disciplinary referral "cannot be characterized as a sanction or a disciplinary measure" and indicates only that the "conduct of the attorneys merits further examination by the disciplinary committee, which may or may not result in a sanction").

The Local Rules of this Court further support the conclusion that Mr. Jauregui was not sanctioned. The Local Rules permit the Court to make a referral "to the appropriate state

7

disciplinary or other authority for investigation and decision." Local Rule 83.6, Rule V(D). Alternatively, the Local Rules provide a procedure for the Court to investigate potential attorney misconduct itself. Id. Rule V(A)-(C), (E). Such an investigation is initiated by a referral of "the matter to the Chief Judge who shall issue an order to show cause," to which the respondent-attorney may answer. Id. Rule V(A)-(B). Under either procedure, a decision on possible sanctions comes only after the state disciplinary process is completed or after the respondent-attorney has an opportunity to request a hearing and respond to a report and recommendation from the judge or judges assigned to hear the matter.[3] Id. Rule V(B), (D), (E).

Pursuant to the Local Rules, the Court's September 17, 2009 Memorandum and Order can only be construed as a referral to a state disciplinary authority and cannot constitute an independent sanction. Although there is no Third Circuit precedent that is precisely on point, the decisions in Teaford and Adkins are persuasive and consistent with the Local Rules. Based on both the Local Rules and these cases, the Court concludes that Mr. Jauregui was not sanctioned.

Additionally, the Court concludes that Mr. Jauregui has not shown good cause to seal the September 17, 2009 Memorandum and Order. There is a well-established "common law right of access to judicial proceedings" and a First Amendment right of access to civil trials. Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1066-67, 1070 (3d Cir. 1984); Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 659-60 (3d Cir. 1991) (same). "[T]he common law presumption of access applies to motions filed in court proceedings," and also to a district court's "action on a motion." Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Associates, 800

---

[3] Because the Court's Memorandum and Order were only a referral, Mr. Jauregui's due process rights were not infringed. As set out in the Local Rules, a disciplinary referral to the Chief Judge or a state disciplinary authority triggers procedural protections that apply after the referral, not prior to the referral. See Teaford, 338 F.3d at 1181 (noting that during the disciplinary process an attorney presumably "will receive all the due process to which [he or] she is entitled, before there is either a finding of misconduct or the imposition of sanctions").

F.2d 339, 343-44 (3d Cir. 1986); Republic of Philippines, 949 F.2d at 661 (same). These public rights of access to civil judicial proceedings weigh strongly against sealing the Memorandum and Order that disposed of this case in federal court and remanded it state court.

Nevertheless, the right of public access "is not absolute." Bank of Am., 800 F.2d at 344. "[C]ourts have inherent equitable power to grant confidentiality orders," however, "good cause must be demonstrated to justify the order." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 785-86 (3d Cir. 1994). To establish "good cause," the party seeking a confidentiality order must show "'that disclosure will work a clearly defined and serious injury'" to that party, which "'must be shown with specificity.'" Id. at 786 (quoting Publicker Indus. Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). In assessing whether there is good cause for a confidentiality order, courts use a "balancing process," id. at 787, and consider seven different factors. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (summarizing the factors as "1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public.")

Mr. Jauregui has not met his burden under Pansy to justify a confidentiality order. In particular, the Local Rules do not provide for sealing initial disciplinary referrals or orders to show cause. Local Rule 83.6, Rule V(A), (D). By contrast, the Local Rules do require that factual findings and disciplinary recommendations be filed under seal, at least until a final disciplinary decision is reached. Id. Rule V(E). This procedure undercuts any claim that Mr.

Jauregui has a recognized privacy interest in a disciplinary referral. Moreover, he has not cited any cases that hold that a disciplinary referral containing no actual sanction or factual finding should be sealed.

In addition, there is inadequate causal evidence to show that Mr. Jauregui has suffered a clearly defined and serious injury because of the disciplinary referral in this case, as opposed to for other reasons. A review of the dockets for three other cases in this Court (each referenced in Mr. Jauregui's declaration) indicates that decisions in those other cases may have affected Mr. Jauregui's reputation and employment prospects to a greater extent than the mere referral that occurred in this case.

Accordingly, the Court concludes that Mr. Jauregui has not shown good cause for a confidentiality order under Pansy.

### VI. Conclusion and Recommendations

Neither Ms. Jauregui nor Mr. Jauregui was sanctioned in this case and only Mr. Jauregui was referred for a disciplinary investigation. This conclusion raises doubts about the Court's jurisdiction to grant relief and, in any event, the Jaureguis have not sufficiently justified sealing the Court's September 17, 2009 Memorandum and Order. For all of these reasons, the Motion for Sealing the Record will be denied.

An appropriate order follows.

O:\CIVIL 09\09-1729 Rhedrick v. Option One\09cv1729.memo re motion to seal.2015-06-22.docx